Daren S. McNally (DM5551)
Barbara M. Almeida (BA7239)
Meghan C. Goodwin (MG3012)
Nicholas S. Pradaxay (5830930)
**CLYDE & CO US LLP**
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
(212) 710-3900 (*phone*)

*Attorneys for Defendant, Federal Insurance Company*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE JOHN GORE ORGANIZATION, INC., | CIVIL ACTION NO. 1:21-cv-02200-PGG |
| Plaintiff, | ORAL ARGUMENT REQUESTED |
| v. | |
| FEDERAL INSURANCE COMPANY, | |
| Defendant. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT**
**FEDERAL INSURANCE COMPANY'S MOTION TO DISMISS UNDER FEDERAL**
**RULE OF CIVIL PROCEDURE 12(b)(6)**

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................. 1

II.    FACTUAL BACKGROUND ............................................................................... 2

   A.   The Federal Policy ....................................................................................... 2

   B.   Plaintiff's Insurance Claim and Complaint .................................................. 3

III.   LEGAL STANDARD.......................................................................................... 5

IV.    LEGAL ARGUMENT ........................................................................................ 6

   A.   New York Law Governs this Dispute ........................................................... 6

   B.   There Is No Breach of Contract Because Plaintiff's Losses Do Not Trigger Coverage Under the Federal Policy ........................................................................................ 7

       1.   "Direct Physical Loss or Damage" Under the Policy's Business Income With Extra Expense Provision Does Not Cover Plaintiff's Purely Economic Losses Caused by the COVID-19 Pandemic ........................................................................... 8

       2.   The Federal Policy's Civil Authority Provision Is Also Inapplicable ...................... 16

       3.   The Lack of a Virus Exclusion Does Not Trigger Coverage ................................. 19

   C.   Plaintiff's Count for Declaratory Judgment Must Also Be Dismissed .......................... 20

   D.   Any Request By Plaintiff for Leave to Amend Its Complaint Must Be Denied ............ 23

V.     CONCLUSION.................................................................................................. 23

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*10012 Holdings, Inc. v. Sentinel Ins. Co., Ltd.*,
  507 F. Supp. 3d 482, 488 (S.D.N.Y. 2020)..................................................................16, 18

*6593 Weighlock Drive, LLC v. Springhill SMC Corp.*,
  71 Misc. 3d 1086 (N.Y. Sup. Ct. 2021) ...........................................................................12

*Allen v. WestPoint–Pepperell, Inc.*,
  945 F.2d 40 (2d Cir.1991).................................................................................................5

*Amusement Indus., Inc. v. Stern*,
  693 F. Supp. 2d 301 (S.D.N.Y. 2010)..........................................................................20, 21

*Anderson News, L.L.C. v. Am. Media, Inc.*,
  680 F.3d 162 .....................................................................................................................5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)......................................................................................................5, 14

*Bridge Metal Indus., L.L.C. v. Travelers Indem. Co.*,
  812 F. Supp. 2d 527 (S.D.N.Y. 2011)................................................................................8

*Buffalo Xerographix, Inc. v. Sentinel Ins. Co., Ltd.*,
  No. 1:20-CV-520, 2021 WL 2471315 (W.D.N.Y. June 16, 2021).........................................14

*Camofi Master LDC v. Coll. P'ship, Inc.*,
  452 F. Supp. 2d 462 (S.D.N.Y. 2006)...............................................................................21

*David Lerner Assocs., Inc. v. Philadelphia Indem. Ins. Co.*,
  934 F. Supp. 2d 533 (E.D.N.Y. 2013) ................................................................................6

*Deer Mountain Inn LLC v. Union Ins. Co.*,
  No. 120CV0984BKSDJS, 2021 WL 2076218 (N.D.N.Y. May 24, 2021) ..............................14

*DeMoura v. Cont'l Cas. Co.*,
  No. 20CV2912NGGSIL, 2021 WL 848840 (E.D.N.Y. Mar. 5, 2021)..............................15, 19

*Dolphin Direct Equity Partners, LP v. Interactive Motorsports & Entm't Corp.*,
  No. 08 Civ. 1558(RMB), 2009 WL 577916 (S.D.N.Y. March 2, 2009) ...............................22

*E\*Trade Fin. Corp. v. Deutsche Bank AG*,
  420 F. Supp. 2d 273 (S.D.N.Y. 2006)...............................................................................23

*Ellis v. Chao*,
    336 F.3d 114 (2d Cir.2003)...................................................................................................23

*Feldman Law Grp. P.C. v. Liberty Mut. Ins. Co.*,
    819 F. Supp. 2d 247 (S.D.N.Y. "2011)................................................................................6

*First Nationwide Bank v. Gelt Funding Corp.*,
    27 F.3d 763 (2d Cir.1994)....................................................................................................5

*Fleisher v. Phoenix Life Ins. Co.*,
    858 F. Supp. 290 (S.D.N.Y. 2012) ....................................................................................21

*Health–Chem Corp. v. Baker*,
    915 F.2d 805 (2d Cir.1990)................................................................................................23

*Intellectual Capital Partner v. Inst. Credit Partners LLC*,
    No. 08 Civ. 10580(DC), 2009 WL 1974392 (S.D.N.Y. July 8, 2009) ..................................21

*Jeffrey M. Dressel, D.D.S., P.C. v. Hartford Ins. Co. of the Midwest, Inc.*,
    No. 20-CV-2777(KAM)(VMS), 2021 WL 1091711 (E.D.N.Y. Mar. 22, 2021) ...................15

*Kim-Chee LLC and Yup Chagi Inc., et al. v. Philadelphia Indem. Ins. Co., et al.*,
    No. 1:20-CV-1136, 2021 WL 1600831 (W.D.N.Y. Apr. 23, 2021)..................................15, 19

*Mangia Rest. Corp. v. Utica First Ins. Co.*,
    No. 713847/2020, 2021 WL 1705760 (N.Y. Sup. Ct. Mar. 30, 2021) ...................................12

*Michael Cetta, Inc. v. Admiral Indem. Co.*,
    506 F. Supp. 3d 168 (S.D.N.Y. 2020)......................................................................16, 17, 20

*Mohawk Gaming Enters., LLC v. Affiliated FM Ins. Co.*,
    No. 8:20-CV-701, 2021 WL 1419782 (N.D.N.Y. Apr. 15, 2021)..........................................15

*Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank*,
    392 F.3d 520 (2d Cir.2004)..................................................................................................7

*Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*,
    17 F. Supp. 3d 323 (S.D.N.Y. 2014)................................................................................10, 11

*Off. Sol. Grp., LLC v. Nat'l Fire Ins. Co. of Hartford*,
    No. 1:20-CV-4736-GHW, 2021 WL 2403088 (S.D.N.Y. June 11, 2021) .............................14

*Olin Corp. v. Am. Home Assur. Co.*,
    704 F.3d 89 (2d Cir.2012)....................................................................................................8

*Prudential Ins. Co. v. BMC Indus., Inc.*,
    655 F. Supp. 710 (S.D.N.Y.1987) ......................................................................................23

iii

*Roundabout Theatre Co., Inc. v. Continental Cas. Co.*,
   751 N.Y.S.2d 4 (1st Dept. 2002) ...............................................................9, 10, 11, 12

*Rye Ridge Corp., et al. v. The Cincinnati Ins. Co.*,
   No. 20 CIV. 7132 (LGS), 2021 WL 1600475 (S.D.N.Y. Apr. 23, 2021)..........................15, 19

*Sharde Harvey, DDS, PLLC v. Sentinel Ins. Co., Ltd.*,
   No. 20CV3350PGGRWL, 2021 WL 1034259 (S.D.N.Y. Mar. 18, 2021)............13, 14, 17, 18

*Sofi Classic S.A. de C.V. v. Hurowitz*,
   444 F. Supp. 2d 231 (S.D.N.Y. 2006).....................................................................21

*Soundview Cinemas Inc. v. Great Am. Ins. Grp.*,
   142 N.Y.S.3d 724 (N.Y. Sup. Ct. 2021) .........................................................12, 19

*Tappo of Buffalo, LLC v. Erie Ins. Co.*,
   No. 20-CV-754V(SR), 2020 WL 7867553 (W.D.N.Y. Dec. 29, 2020) ...................................14

*Travelers Cas. & Sur. Co. v. Dormitory Auth.-State of New York*,
   735 F. Supp. 2d 42 (S.D.N.Y. 2010)........................................................................7

*U.S. Fid. & Guar. Co. v. Annunziata*,
   67 N.Y.2d 229 (1986) .............................................................................................8

*Visconti Bus Serv., LLC v. Utica Nat'l Ins. Grp.*,
   No. EF005750-2020, 2021 WL 609851 (N.Y. Sup. Ct. Feb. 12, 2021) .......................... *passim*

## Other Authorities

Fed.R.Civ.P. 15(a) ........................................................................................................23

Federal Rule of Civil Procedure 12(b)(6) ....................................................................3, 5, 23, 24

iv

## I.    **INTRODUCTION**

The COVID-19 pandemic has created difficult circumstances for many businesses across the country which, as a result, have sustained economic losses. Many businesses have filed insurance claims seeking coverage under first-party property insurance policies for their COVID-19-related losses. Courts across the country, however, including those applying New York law, have found that there is no coverage for purely economic losses because such losses do not trigger coverage under first-party property insurance policies which require "direct physical loss or damage" to property as a condition precedent to coverage. Indeed, both federal and state courts have found that longstanding New York precedent supports a finding that such policies require some sort of actual, tangible, and demonstrable damage to property, and losses caused by the COVID-19 pandemic do not meet this requirement.

Plaintiff The John Gore Organization, Inc. ("Plaintiff" or "JGO") has filed a Complaint before this Court asserting damages against Defendant Federal Insurance Company ("Federal") for its alleged refusal to provide coverage for its business losses caused by the COVID-19 pandemic under a first-party property insurance policy issued by Federal. Plaintiff asserts two causes of action against Federal: (1) breach of contract; and (2) declaratory judgment.

Plaintiff fails to plead a prima facie case for breach of contract. Specifically, Plaintiff fails to allege that: (i) its losses were caused by "direct physical loss or damage" to property under the Federal Policy's Business Income With Extra Expenses provision; and (ii) a civil authority order prohibited access to its properties as a direct result of "direct physical loss or damage" to nearby properties under the Federal Policy's Civil Authority provision. Therefore, Plaintiff's cause of action for breach of contract should be dismissed by this Court.

1

Additionally, Plaintiff's cause of action for declaratory judgment must also be dismissed because it is duplicative and redundant of the factual and legal allegations which form the basis for its cause of action for breach of contract.

Finally, given the fact Plaintiff would be unable to allege that the COVID-19 pandemic caused "direct physical loss or damage" to Plaintiff's properties or any nearby properties, there is no basis justifying any request by Plaintiff for leave to amend the Complaint. Any such request should respectfully be denied.

## II.   FACTUAL BACKGROUND

### A.   THE FEDERAL POLICY

Federal issued a Customarq Series Entertainment Insurance Program Policy No. 7954-42-79 (the "Policy" or "Federal Policy") to Plaintiff, effective from July 1, 2019 to July 1, 2020. Exhibit A to Plaintiff's Complaint, ECF Doc. 1-1, p.6. The Federal Policy provides first-party property insurance for multiple premises located in multiple states. *Id*. at pp.18-28.

The Federal Policy's **Business Income and Extra Expense** provision states:

[Federal] will pay for the actual:

- **business income** loss you incur due to the actual impairment of [JGO's] operations; and

- **extra expense** you incur due to the actual or potential impairment of [JGO's] **operations,**

during the **period of restoration,** not to exceed the applicable Limit Of Insurance for Business Income With Extra Expense shown in the Declarations.

This actual or potential impairment of **operations** *must be caused by or result from direct physical loss or damage* by a **covered peril** to **property**, unless otherwise stated.

*Id*. at p.69 (bolded terms appear in original, italicized terms added for emphasis).

2

The **Civil Authority** provision under the Federal Policy provides:

[Federal] will pay for the actual:

- **business income** loss; or

- **extra expense**,

[JGO] incur[s] due to the actual impairment of your **operations** directly caused by the prohibition of access to:

- [JGO's] premises; or

- a **dependent business premises**

by a civil authority.

This prohibition of access by a civil authority *must be the direct result of direct physical loss or damage to property* away from such premises or such **dependent business premises** by a **covered peril**, provided such property is within:

- one mile; or
- the applicable miles shown in the Declarations,

from such premises or **dependent business premises**, whichever is greater.

*Id*. at pp. 71-72 (bolded terms appear in original, italicized terms added for emphasis).

As set forth in the quoted provisions above, the Federal Policy requires "direct physical loss or damage" to property as a condition precedent to coverage.

### B.     PLAINTIFF'S INSURANCE CLAIM AND COMPLAINT

On March 12, 2021, Plaintiff filed a Complaint before this Court asserting causes of action against Federal for: (1) breach of contract; and (2) declaratory judgment.  ECF Doc. 1-1, Counts I and II.  Per stipulation by the parties, Federal's deadline to answer, move, or otherwise respond to Plaintiff's Complaint was May 14, 2021.  ECF Doc. 10.  On May 13, 2021, Federal filed a letter requesting a pre-motion conference pertaining to leave for Federal to file a motion to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), to which Plaintiff filed

3

an opposition.  ECF Docs. 12, 13.  On June 17, 2021, the Court granted Federal leave to file the current motion to dismiss Plaintiff's Complaint.  ECF Doc. 17.

Plaintiff's Complaint alleges its causes of action for breach of contract and declaratory judgment arise out of Federal's alleged refusal to provide insurance coverage under the Federal Policy for Plaintiff's significant business losses "arising out of the novel coronavirus outbreak and ongoing COVID-19 pandemic."  ECF Doc. 1, at ¶ 1. As a result of "state and local governments banning large gatherings and implementing stay-at-home orders to stem the spread of the pandemic" (the "Orders"), Plaintiff claims it was forced to cease its theater operations.  *Id*. at ¶ 3. Plaintiff claims the outbreak of COVID-19 virus caused "direct physical loss or damage" to Plaintiff's properties, and Plaintiff "suffered, and continues to suffer, substantial financial losses" as a result of state and local government orders forcing Plaintiff to cease its theater operations.  *Id*. at ¶ 4.

In support of its position, Plaintiff alleges that COVID-19 is a virus that can be spread when "droplets from an infected person land on objects and surfaces, and then, after contact with the infected objects and surfaces, other individuals touch their eyes, nose, or mouth."  *Id*. at ¶ 17. Plaintiff further alleges that "[t]hough droplets carrying the virus are not visible, they are nonetheless physical objects, carrying a physical substance, that attach and cause harm to property."  *Id*. at ¶ 22.

Plaintiff further purports that New York City Mayor Bill de Blasio's a stay-at-home order in mid-March "recognized that 'the virus physically is causing property loss and damage.'"  *Id*. at ¶ 27. Plaintiff claims it has had "multiple confirmed cases of COVID-19 at and near its premises and dependent venues during the relevant period."  *Id*. at ¶ 31.  Plaintiff also claims that "it is

4

statistically certain that the virus has been present at all of [JGO's] premises and dependent venues for some period of time since the COVID-19 outbreak began." *Id*. at ¶ 33.

Plaintiff asserts coverage is triggered under the Federal Policy for its alleged losses which resulted "from direct physical loss or damage to property, including, but not necessarily limited to, the actual and/or threatened presence of the virus at [JGO's] premises and dependent venues . . . and the loss of function, purpose, and use of the properties." *Id*. at ¶ 39.  Particularly, Plaintiff asserts that it is entitled to coverage under the Federal Policy's Business Income With Extra Expense Coverage and/or Civil Authority coverage. *Id*. at ¶ 47.

## III.   <u>LEGAL STANDARD</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In ruling on a motion to dismiss, a court "is required to proceed 'on the assumption that all the [factual] allegations in the complaint are true.'" *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (alteration in original) (quoting *Twombly*, 550 U.S. at 555). The court must "construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff." *Anderson News*, 680 F.3d at 185. Nevertheless, the District Court need not accept as true "conclusions of law or unwarranted deductions of fact." *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir.1994).

On a Rule 12(b)(6) motion, the District Court may consider "facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir.1991). When a plaintiff insured brings suit to enforce the contractual

obligations owed under the terms of an insurance policy issued by its insurer, a District Court may properly dismiss the suit if it determines as a matter of law that no insurance coverage exists for the insured's claims under the insurance policy. *David Lerner Assocs., Inc. v. Philadelphia Indem. Ins. Co.*, 934 F. Supp. 2d 533, 536 (E.D.N.Y.), *aff'd*, 542 F. App'x 89 (2d Cir. 2013) (granting an insurer's motion to dismiss its insured's claims for declaratory judgment and breach of contract after determining there was no duty to defend or indemnify under the insurance policy issued its insured).

## IV. LEGAL ARGUMENT

### A. NEW YORK LAW GOVERNS THIS DISPUTE

"In diversity actions, federal courts follow the choice-of-law rules of the forum state to determine the controlling substantive law." *Feldman Law Grp. P.C. v. Liberty Mut. Ins. Co.*, 819 F. Supp. 2d 247, 255 (S.D.N.Y. "2011), aff'd, 476 F. App'x 913 (2d Cir. 2012) (citation omitted). "If there is a conflict, in a contract case, '[i]t is well settled that New York has long recognized "the use of a center of gravity or grouping of contacts analytical approach to choice of law questions."'" *Id*. (quoting *In re Liquidation of Midland Ins. Co.*, 16 N.Y.3d 536, 543, 923 N.Y.S.2d 396, 947 N.E.2d 1174 (2011) (quoting *Zurich Ins. Co. v. Shearson Lehman Hutton*, 84 N.Y.2d 309, 317, 618 N.Y.S.2d 609, 642 N.E.2d 1065 (1994))).

"In the insurance context, courts typically apply the law of the state which the parties understood was to be the principal location of the insured risk, unless the policy in question cover[s] risks that are spread throughout multiple states." *Id*. at 255-56 (citations and internal quotations omitted). "In such cases, the goals of certainty, predictability and uniformity of result and ease in the determination and application of the law to be applied augur in favor of applying the laws of the insured's principal domicile." *Id*. (citations and internal quotations omitted).

6

Here, Plaintiff alleges its principal place of business is at 1619 Broadway, 8th and 9th Floors, New York, New York 10019. ECF Doc. 1, at ¶ 11. The same location is listed as the Named Insured's mailing address and the first property listed on the Federal Policy's Premises Schedule. ECF Doc. 1-1, at p.22. Accordingly, the principal location of insured risk under the Policy is this location. Therefore, Plaintiff's principal location of insured risk is in the State of New York, and New York law governs the interpretation of the terms and conditions of the Federal Policy.

### B.      THERE IS NO BREACH OF CONTRACT BECAUSE PLAINTIFF'S LOSSES DO NOT TRIGGER COVERAGE UNDER THE FEDERAL POLICY

Count One of Plaintiff's Complaint asserts breach of contract. ECF Doc. 1, at Count I. Plaintiff alleges the Federal Policy constitutes a valid and enforceable contract between Plaintiff and Federal. *Id*. at ¶ 63. Plaintiff purports that "Federal has not paid any amounts to JGO in connection with its claim and has refused to pay the full amount it is required to pay under the Policy for JGO's business interruption and/or civil authority losses," and Federal's alleged breach of the terms and conditions of the Policy caused Plaintiff to suffer damages. *Id*. at ¶ 67-68. As set forth below, Plaintiff's Complaint fails to sufficiently allege that Federal has breached the clear and unambiguous terms of the Policy.

Under New York law, "[t]o establish a prima facie case for breach of contract, a plaintiff must plead and prove: (1) the existence of a contract; (2) a breach of that contract; and (3) damages resulting from the breach." *Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520, 525 (2d Cir.2004). "[A] written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *Travelers Cas. & Sur. Co. v. Dormitory Auth.-State of New York*, 735 F. Supp. 2d 42, 56 (S.D.N.Y. 2010) (quoting *MHR Capital Partners LP v. Presstek, Inc.*, 12 N.Y.3d 640, 645, 884 N.Y.S.2d 211, 912 N.E.2d 43 (2009)).

When "interpreting [an] insurance policy, the ordinary rules of contractual interpretation apply." *Bridge Metal Indus., L.L.C. v. Travelers Indem. Co.*, 812 F. Supp. 2d 527, 535 (S.D.N.Y. 2011) (citation omitted). "Ambiguity [in an insurance policy] is absent where the contract's language provides 'a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion.'" *Olin Corp. v. Am. Home Assur. Co.*, 704 F.3d 89, 99 (2d Cir.2012) (quoting *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir.1989)). "Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation." *Olin Corp.*, 704 F.3d at 99 (quoting *Hunt Ltd.*, 889 F.2d at 1277). "Where the provisions of the policy are clear and unambiguous, they must be given their plain and ordinary meaning, and courts should refrain from rewriting the agreement." *U.S. Fid. & Guar. Co. v. Annunziata*, 67 N.Y.2d 229, 232, 492 N.E.2d 1206, 1207 (1986) (citations and internal quotations omitted).

As set forth above, the Federal Policy's Business Income With Extra Expense and Civil Authority provisions require "direct physical loss or damage" to property as a condition precedent to coverage.  Plaintiff's Complaint fails to sufficiently allege "direct physical loss or damage" to *any* property,  Indeed, multiple state and federal courts applying New York law have found that purely economic losses caused by the COVID-19 pandemic *do not* constitute "direct physical loss or damage" under first-party property insurance policies.

1. **"DIRECT PHYSICAL LOSS OR DAMAGE" UNDER THE POLICY'S BUSINESS INCOME WITH EXTRA EXPENSE PROVISION DOES NOT COVER PLAINTIFF'S PURELY ECONOMIC LOSSES CAUSED BY THE COVID-19 PANDEMIC**

Plaintiff alleges "the actual and/or threatened presence of the virus" at its properties, and the "loss of function, purpose, and use of" its properties, are both sufficient to demonstrate its

losses were a result of "direct physical loss or damage" to property. ECF Doc. 1, at ¶ 39.  In further support of its position, Plaintiff purports that Orders such as New York City Mayor Bill de Blasio's stay-at-home order "recognized that 'the virus physically is causing property loss and damage'" *Id*. at ¶ 27. Plaintiff also alleges it had "multiple confirmed cases of COVID-19 at and near its premises and dependent venues during the relevant period" and "it is statistically certain that the virus has been present at all of [JGO's] premises and dependent venues for some period of time since the COVID-19 outbreak began."  *Id*. at ¶¶ 31, 33.  Such allegations are not sufficient to demonstrate that Plaintiff's losses were caused by "direct physical loss or damage" under New York law.  Accordingly, and as set forth more fully below, Plaintiff's alleged losses *do not* trigger the Federal Policy's Business Income With Extra Expense coverage.

With respect to interpreting the phrase "direct physical loss or damage" under a first-party property insurance policy, the Supreme Court of New York has stated that the First Department's decision in *Roundabout Theatre Co., Inc. v. Continental Cas. Co.*, 751 N.Y.S.2d 4 (1st Dept. 2002) is "the seminal New York state authority." *Visconti Bus Serv., LLC v. Utica Nat'l Ins. Grp.*, No. EF005750-2020, 2021 WL 609851, at *4 (N.Y. Sup. Ct. Feb. 12, 2021).

Like Plaintiff, the insured in *Roundabout* was a theater company which sought business interruption coverage under a first-party property insurance policy.  751 N.Y.S.2d at 5.  In *Roundabout*, the New York City Office of Emergency Management closed certain streets near an accident site where a 48-story exterior elevator collapsed into the street and adjacent buildings.  *Id*. As a result, the Roundabout's properties became inaccessible to the public and Roundabout was forced to cancel multiple theatre performances.  *Id*.  Roundabout then "sustained substantial monetary losses in the form of ticket and production-related sales as well as expenses incurred in re-opening the production." *Id*.

9

Very similar to the relevant policy language in the Federal Policy, the policy in *Roundabout* contained an insuring agreement which provided coverage for loss that the "Insured shall necessarily incur in the event of interruption, postponement or cancellation of an insured Production *as a direct and sole result of loss of, damage to or destruction of property or facilities*" and a "Perils Insured" clause which insures against "*all risks of direct physical loss or damage*" to properties specified in the policy. *Id*. (emphasis in original).

When considering Roundabout's insurance claim, the First Department found that that "*the only conclusion that can be drawn is that the business interruption coverage is limited to losses involving physical damage to the insured's property*." *Id*. at 8 (emphasis added). The Court also expressly rejected the insured's argument that the policy covered "loss of use of" the insured's property, noting that such an interpretation would contradict the policy's "Definition of Loss" section which limited the measure of recovery was limited to "such length of time as would be required with exercise of due diligence and dispatch to **rebuild, repair or replace such part of the property herein described as has been lost, damaged or destroyed**." *Id*. (emphasis in original).

Nearly twelve years later, this District Court affirmed the reasoning applied by the First Department in *Roundabout*. In *Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323, 325 (S.D.N.Y. 2014), Judge Paul A. Engelmayer considered an insurance claim "for loss of business income and extra expenses occasioned by its inability to access its office during the power outage." When considering the insured's claim, Judge Engelmayer noted "*the decisive question is whether the insured premises experienced 'direct physical loss or damage*.'" *Id*. at 328 (emphasis added). Citing the *Roundabout* decision, Judge Engelmayer held that the phrase "*unambiguously, requires some form of actual, physical damage to the insured*

10

*premises to trigger loss of business income and extra expense coverage*." *Id*. at 331 (emphasis added).  Particularly, Judge Engelmayer found that "*[t]he words 'direct' and 'physical,' which modify the phrase 'loss or damage,' ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons exogenous to the premises themselves, or the adverse business consequences that flow from such closure*."  *Id*. (emphasis added).

Despite long-standing New York precedent to the contrary, Plaintiff insists its purely economic losses caused by COVID-19 pandemic constitute "direct physical loss or damage" under a first-party property insurance policy.  New York state courts, however, have continued to uphold the holdings in *Roundabout* and *Newman Myers* when contemplating alleged business interruption losses caused by COVID-19.

In *Visconti*, the Supreme Court of New York considered an insured's losses incurred by the COVID-19 pandemic under an insurance policy's business income and expense coverage which contains language substantially similar to the Federal Policy's Business Income With Extra Expense provision. 2021 WL 609851, at *2.  The policy in *Visconti* provided that the insurer "will pay for the actual loss of Busines Income [the insured] sustain[s] due to the necessary 'suspension' of [the insured's] 'operations' during the 'period of restoration,'  and the "'suspension' **must be caused by direct physical loss or damage to property at premises** which are described in the Declarations."  *Id*. (emphasis in original).

After summarizing the First Department's decision in *Roundabout*, Judge Catherine M. Bartlett found that "*[t]he reasoning of the Roundabout Court is fully applicable to the case at bar*."  *Id*. at *5 (emphasis added).  Judge Bartlett noted that "[t]he words 'direct' and 'physical' narrow the scope of coverage to physical damage to the property itself and foreclose [the insured's]

11

argument that the phrase 'loss of' includes mere 'loss of use of' the property." Judge Bartlett also noted "[t]he measure of recovery in the . . . policy is limited, much as in *Roundabout*, to the period within which the property should be 'repaired, rebuilt or replaced.'"   *Id*.   Judge Bartlett also summarized and considered this District Court's decision in *Newman Meyers*, and held:

> *Newman Myers squarely holds that the very policy language at issue in the . . . policy here requires "actual, demonstrable harm of some form to the premises itself*, rather than forced closure of the premises for reasons exogenous to the premises," and squarely rejects the very claim made by Visconti here, i.e., that "'direct physical loss or damage' should be read to include ... mere loss of use of a premises, where there has been no physical damage to such premises."

*Id*. at *6 (emphasis added).  *See also Mangia Rest. Corp. v. Utica First Ins. Co.*, No. 713847/2020, 2021 WL 1705760, at *5 (N.Y. Sup. Ct. Mar. 30, 2021) (citation omitted) ("As a result of COVID-19 closure orders throughout the country, many businesses have brought lawsuits claiming entitlement to coverage under provisions materially similar to those at issue in *Roundabout Theatre*, *Newman Meyers*, and here. And nearly every court to address the issue has concluded that loss of use of premises due to a governmental closure order does not trigger business income coverage premises on physical loss of property."); *6593 Weighlock Drive, LLC v. Springhill SMC Corp.*, No. 71 Misc. 3d 1086, 1093-96 (N.Y. Sup. Ct. 2021) (citing *Roundabout*, *Newman Myers*, and *Visconti* in finding that "plaintiffs failed to plead COVID-19 or the various governmental closure orders caused tangible physical loss or damage to their hotels").

Additionally, and even more pertinent to Plaintiff's claim, the Supreme Court of New York has already denied movie theater companies' insurance claims under business income and extra expense coverage provisions.  *Soundview Cinemas Inc. v. Great Am. Ins. Grp.*, 142 N.Y.S.3d 724, 735 (N.Y. Sup. Ct. 2021) ("While the Court is sympathetic to the economic consequences resulting from the closure of Plaintiff's movie theater, the Court concurs with the majority view that loss of use of the Premises due to COVID-19 related government orders does not constitute 'direct

physical loss of or damage to the property' that would trigger Business Income coverage under the Policy.").

Thus, Plaintiff's alleged loss of use of its properties for their intended purposes is not enough to trigger the Federal Policy's Business Income With Extra Expense coverage because COVID-19 has not caused any actual, tangible, or demonstrable damage to Plaintiff's properties. Furthermore, Plaintiff's allegations that New York City Mayor Bill de Blasio's stay-at-home order "recognized that 'the virus physically is causing property loss and damage'" and "it is statistically certain that the virus has been present at all of [JGO's] premises and dependent venues for some period of time since the COVID-19 outbreak began" because it had "multiple confirmed cases of COVID-19 at and near its premises and dependent venues" do not change this conclusion.

Indeed, the New York Supreme Court has already found that "*even if COVID-19 were found at [an insured's] premises, it would not constitute the direct, physical loss or damage required to trigger coverage because its presence can be eliminated by routine cleaning and disinfecting*." *Visconti*, 2021 WL 609851 at *10 (emphasis added). This District Court and the Western District of New York have also found that the alleged presence of the COVID-19 virus on an insured's property does not alter the Court's conclusion that COVID-19 does not cause tangible or demonstrable damage to an insured's property. *Sharde Harvey, DDS, PLLC v. Sentinel Ins. Co., Ltd.*, No. 20CV3350PGGRWL, 2021 WL 1034259, at *10 (S.D.N.Y. Mar. 18, 2021) (finding "contamination by a virus does not constitute 'direct physical loss' where the property merely needs to be cleaned and routine cleaning and disinfecting can eliminate its presence"); *Food for Thought Caterers Corp. v. Sentinel Ins. Co.*, Ltd., No. 20-CV-3418 (JGK), 2021 WL 860345, at *5 (S.D.N.Y. Mar. 6, 2021) ("Moreover, contamination of the premises by a virus does not constitute a 'direct physical loss' because the virus's presence can be eliminated by 'routine

13

cleaning and disinfecting,' and 'an item or structure that merely needs to be cleaned has not suffered' a direct physical loss."); *Tappo of Buffalo, LLC v. Erie Ins. Co.*, No. 20-CV-754V(SR), 2020 WL 7867553, at *4 (W.D.N.Y. Dec. 29, 2020) (finding "an item or structure that merely needs to be cleaned has not suffered a 'loss' which is both 'direct' and 'physical'").

Additionally, this District Court has already found that "*statements from Mayor de Blasio's executive orders that the 'virus physically is causing property loss and damage . . . are too general and unsupported by specific facts to allege plausibly that [an insured's] property was damaged, and speculative allegations without factual support cannot serve as a basis for a claim.*" *Food for Thought*, 2021 WL 860345, at *5 (emphasis added) (citing *Iqbal*, 556 U.S. at 678). *See also Buffalo Xerographix, Inc. v. Sentinel Ins. Co., Ltd.*, No. 1:20-CV-520, 2021 WL 2471315, at *4 (W.D.N.Y. June 16, 2021) ("Many courts applying New York law, including this one, have already concluded that business closures due to the presence of the coronavirus or due to New York State executive orders do not constitute 'direct physical loss of or damage to' property."); *Sharde Harvey*, 2021 WL 1034259, at *1 ("[E]ven if Mayor de Blasio's order could somehow establish that COVID-19 or the COVID-19 pandemic did, in fact, cause "property loss or damage," the order does not purport to establish that [the insured's] premises suffered any such loss or damage. Such generalized allegations cannot suffice to establish coverage.").

Lastly, in addition to the cases discussed above, Federal also refers the Court to the several New York District Courts which have also found that business losses caused by the COVID-19 pandemic do not trigger coverage under a first-party property insurance policy which requires "direct physical loss or damage" to property:

- *Off. Sol. Grp., LLC v. Nat'l Fire Ins. Co. of Hartford*, No. 1:20-CV-4736-GHW, 2021 WL 2403088, at *7 (S.D.N.Y. June 11, 2021) ("Plaintiff is only one of numerous businesses that suffered immense income loss after shutting its doors during the pandemic. Many of those other businesses have brought materially identical actions in New York seeking

14

business impact coverage from their insurance providers. New York courts have consistently maintained that 'direct physical loss of or damage' language requires physical damage to invoke coverage, and that loss of use due to the pandemic does not constitute physical damage when the covered property was physically unharmed by the virus.");

- *Deer Mountain Inn LLC v. Union Ins. Co.*, No. 120CV0984BKSDJS, 2021 WL 2076218, at *7 (N.D.N.Y. May 24, 2021) ("More recently, a number of New York state and federal courts have considered claims virtually identical to Plaintiff's, involving the same policy language and similar arguments to those Plaintiff makes here. Applying the principles set forth in *Roundabout* and *Newman Myers*, these courts have uniformly found that, under New York law, the loss that Plaintiff complains of—the loss of use of property for its intended, economically beneficial purpose as a result of the Closure Orders—is not the type of 'direct physical loss of . . . property' the Policy contemplates.");

- *Kim-Chee LLC and Yup Chagi Inc., et al. v. Philadelphia Indem. Ins. Co., et al.*, No. 1:20-CV-1136, 2021 WL 1600831, at *6 (W.D.N.Y. Apr. 23, 2021) ("In the absence of plausible allegations that the virus persists within insured premises in the manner of gasoline or other contaminants, the reduction in business activity mandated by the state shutdown orders is best described as an instance of widespread economic loss due to restrictions on human activities, not the consequence of a direct physical loss or damage to the insured premises.");

- *Rye Ridge Corp., et al. v. The Cincinnati Ins. Co.*, No. 20 CIV. 7132 (LGS), 2021 WL 1600475, at *3 (S.D.N.Y. Apr. 23, 2021) ("Plaintiffs also argue that 'loss' does not require structural alteration. This argument misses the point that, under New York law, 'loss' as it is used in the Policies does not mean loss of use; instead there must be some physical damage to the premises.");

- *Mohawk Gaming Enters., LLC v. Affiliated FM Ins. Co.*, No. 8:20-CV-701, 2021 WL 1419782, at *5 (N.D.N.Y. Apr. 15, 2021) ("Indeed, numerous courts around the country—including those that have applied New York law—have routinely held that the mere presence or spread of the novel coronavirus is insufficient to trigger coverage when the policy's language requires physical loss or physical damage.");

- *Jeffrey M. Dressel, D.D.S., P.C. v. Hartford Ins. Co. of the Midwest, Inc.*, No. 20-CV-2777(KAM)(VMS), 2021 WL 1091711, at *3 (E.D.N.Y. Mar. 22, 2021) ("Plaintiff, however, does not allege that its loss of income was caused by any physical property suffering a loss, in value or otherwise. Similarly, 'physical damage to property' can only mean that the physical property suffered some sort of physical damage.");

- *DeMoura v. Cont'l Cas. Co.*, No. 20CV2912NGGSIL, 2021 WL 848840, at *5 (E.D.N.Y. Mar. 5, 2021) ("New York courts have consistently understood identically worded insurance clauses to exclude business interruption losses from coverage when the losses were not caused by real, tangible damage to or loss of the property.");

15

- *10012 Holdings, Inc. v. Sentinel Ins. Co., Ltd.*, 507 F. Supp. 3d 482, 488 (S.D.N.Y. 2020) ("Plaintiff argues that because a 'Covered Cause of Loss' includes 'risks of direct physical loss,' Defendant agreed to cover business lost due to the risk of COVID-19 on Plaintiff's premises. Plaintiff does not explain how this language implicates the Business Interruption provisions cited in the Complaint.");

- *Michael Cetta, Inc. v. Admiral Indem. Co.*, 506 F. Supp. 3d 168, 176 Dec. 11, 2020) ("The plain meaning of the phrase 'direct physical loss of or damage to' therefore connotes a negative alteration in the tangible condition of property.")

Therefore, based on the foregoing precedent and recent decisions cited above, Plaintiff's alleged losses do not trigger coverage under the Policy's Business Income With Extra Expense provision because the purely economic losses caused by the COVID-19 pandemic alleged by Plaintiff did not result from "direct physical loss or damage" to insured property. Consequently, Plaintiff's count for breach of contract must be dismissed because Plaintiff has failed to sufficiently allege that Federal has breached the terms of the Policy's Business Income With Extra Expense provision.

### 2.    THE FEDERAL POLICY'S CIVIL AUTHORITY PROVISION IS ALSO INAPPLICABLE

Plaintiff also alleges it is entitled to coverage under the Federal Policy's Civil Authority provision. ECF Doc 1, at ¶ 39. In support of this position, Plaintiff claims it has had multiple confirmed cases of COVID-19 "near its premises and dependent venues," and "it is statistically certain that the virus has been present at . . . dependent venues." *Id*. at ¶¶ 31, 33. As previously mentioned, the Policy's Civil Authority coverage requires Plaintiff to demonstrate that its losses were incurred due to the actual impairment of its operations "*directly caused by the prohibition of access . . . by a civil authority*" and the "*prohibition of access by a civil authority must be the direct result of direct physical loss or damage to property away from such premises*." ECF Doc. 1-1, at

16

pp. 71-72 (emphasis added).  Plaintiff's count for breach of contract must also fail on these grounds because Plaintiff has failed to plead sufficient facts which trigger the Civil Authority coverage.

As a threshold matter, pursuant to the clear and unambiguous language of the Policy's Civil Authority provision, and similar to the requirement under the Policy's Business Income With Extra Expense provision, Plaintiff must sufficiently allege "direct physical loss or damage" to property to trigger coverage.  Accordingly, the cases discussed in the previous section also support a finding that Plaintiff's losses are not covered under the Policy's Civil Authority provision because Plaintiff has failed to sufficiently allege that COVID-19 has caused tangible damage to properties outside of its own premises.

Secondly, Plaintiff fails to sufficiently allege that access to its premises was prohibited by any civil authority because the state and local government Orders referenced in Plaintiff's Complaint are not sufficient to meet this requirement.  As this District Court has noted, "*[n]othing about New York's shutdown orders enable [an insured] to satisfy the express requirements of [a policy's] Civil Authority provision.*"  *Sharde Harvey*, 2021 WL 1034259, at *13 (emphasis added). With respect to the government shutdown Orders cited in Plaintiff's Complaint, this District Court has found that "*limiting access is distinct from prohibiting access*, such as in a situation where an unsafe condition at an adjoining building would require a safety evacuation."  *Id*. (emphasis added) (citations omitted).  *See also Food for Thought*, 2021 WL 860345 at *6 ("Food for Thought's allegation that the civil authority orders prohibited access to its 'property for its intended purpose' is not enough to trigger the Civil Authority coverage provision. . . . [B]ecause no civil authority order denied complete access to the plaintiff's premises, the Amended Complaint fails to allege that access was 'specifically prohibited' "); *Michael Cetta*, 506 F. Supp. 3d at 184 ("[Plaintiff] has not alleged that access was ever denied completely to the restaurant [and] ... under the plain

17

meaning of the Policy, if employees (but not patrons) were allowed access to the indoor portions of the restaurant, civil authority did not prohibit access"). At best, Plaintiff's Complaint merely contemplates that the government shutdown Orders limited public access to its properties—there was no actual prohibition of access to its properties.

Lastly, even assuming *arguendo* that Plaintiff had sufficiently alleged "direct physical loss or damage" to nearby properties (which it has not) and the relevant government Orders actually prohibited access to its premises (which they do not), Plaintiff has failed to meet the Civil Authority provision's express requirement that the "prohibition of access by a civil authority *must be the direct result of direct physical loss or damage to property away from such premises*." ECF Doc. 1-1, at pp.71-72 (emphasis added). As this District Court has stated:

> It is plausible that the risk of Covid-19 being physically present in neighboring properties caused state and local authorities to prohibit access to those properties. *But the Complaint does not allege that these closures of neighboring properties "direct[ly] result[ed]" in closure of Plaintiff's own premises, as the Civil Authority provisions require*. Instead, the Complaint alleges that Plaintiff was forced to close for the same reason as its neighbors — the risk of harm to individuals on its own premises due to the pandemic. *Put differently, the Complaint does not plausibly allege that the potential presence of Covid-19 in neighboring properties directly resulted in the closure of Plaintiff's properties; rather, it alleges that closure was the direct result of the risk of Covid-19 at Plaintiff's property*.

*10012 Holdings, Inc.*, 507 F. Supp. At 488-89 (emphasis added). *See also Sharde Harvey*, 2021 WL 1034259, at *15 ("Mayor de Blasio's order cannot redefine preexisting contract terms or overrule the state appellate courts' interpretation of the law. Even if it could, his order did not state with any specificity that property in the 'immediate area' of [the insured] was at risk of direct physical loss, let alone that it was that specific risk of loss that led to the shutdown order."); *Food for Thought*, 2021 WL 860345, at *7 ("[B]ecause [the insured] failed to plead specific facts showing that the COVID restrictions that applied to the property at issue were the direct result of a risk of direct physical loss to other property in the immediate area, it has not shown entitlement

18

to coverage under the Civil Authority provision."); *Soundview Cinemas*, 142 N.Y.S.3d at 735-36 ("Civil Authority coverage is not triggered because access to the Premises was not prohibited due to direct physical loss of or damage to neighboring property.").

Therefore, Plaintiff has also failed to meet the express requirements of the Policy's Civil Authority provision.  Accordingly, Plaintiff's count for breach of contract must also be dismissed on the grounds that Plaintiff has failed to sufficiently allege that Federal breached the terms of the Policy's Civil Authority provision.

### 3.     THE LACK OF A VIRUS EXCLUSION DOES NOT TRIGGER COVERAGE

At numerous points in its Complaint, Plaintiff asserts that Federal's failure to include a virus exclusion in the Policy is somehow indicative of coverage being warranted under the Policy. ECF Doc. 1, at ¶¶ 5, 8-9, 48, 59.  These meritless assertions are a red herring which this District Court has already declined to recognize, and which do not warrant survival of a motion to dismiss.

New York District Courts have found that any argument pertaining to a policy's lack of a virus exclusion is rendered moot when the insured has failed to sufficiently allege a loss within the terms of the relevant policy.  *See Kim-Chee LLC*, 2021 WL 1600831, at *8 ("Defendants' decision to forego the virus exclusion does not alter the limits the direct physical loss clause places on the coverage."); *Rye Ridge Corp.*, 2021 WL 1600475, at *3 ("Plaintiffs' argument that there is no virus exclusion in the Policies is irrelevant because the Complaint does not meet its initial burden of pleading that the Policies apply."); *Demoura*, 2021 WL 848840, at *7 ("Because Plaintiff has failed to state a claim for relief under the provisions discussed above, the question of whether the Policy contains an exclusion for losses caused by virus or pandemic is moot.").

Moreover, even if the Federal Policy were to contain a virus exclusion, the New York Supreme Court and this District Court have found that the assessment of a virus exclusion's

application is unnecessary when the insured has failed to sufficiently allege that its losses fall within the terms of a first-party property insurance policy which requires the "direct physical loss or damage" to property as a condition to coverage. *See Michael Cetta*, 506 F. Supp. 3d, at 185, n.5 ("Because the Court concludes that [the insured] fails to establish entitlement to coverage under the Policy, it need not reach the question of whether [the policy's] exclusions would apply."); *Visconti*, 2021 WL 609851, at *13 ("Since the Court has determined that there is no coverage under the . . . policy in the first instance, the interpretation of the virus exclusion may await another day.").

Accordingly, Plaintiff's count for breach of contract must be dismissed because the absence of a virus exclusion in the Federal Policy does not create coverage that does not otherwise exist where, as here, the insured failed to demonstrate "direct physical loss or damage" to property as required under the Federal Policy.

## C.    PLAINTIFF'S COUNT FOR DECLARATORY JUDGMENT MUST ALSO BE DISMISSED

The factual and legal basis of Plaintiff's count for breach of contract is replicated in Plaintiff's "separate" count for declaratory judgment. ECF Doc. 1, Count II. In turn, Plaintiff's counts for breach of contract and declaratory judgment seek relief for events arising from the same subject matter that is governed by the Federal Policy. As set forth below, New York law also permits dismissal of Plaintiff's count for declaratory judgment because it is redundant and duplicative of Plaintiff's cause of action for breach of contract.

"Even where an actual controversy has been established, a court must still decide whether it will exercise its discretion to entertain a request for declaratory judgment. *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 301, 311 (S.D.N.Y. 2010). "In making such a determination, a court must consider: '(1) whether the judgment will serve a useful purpose in clarifying or settling the

20

legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty.'" *Id.* (quoting *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir.2005)). When a cause of action for declaratory judgment is duplicative of the legal issues resolved in other causes of action set forth in a complaint, dismissal of the duplicative declaratory judgment by the District Court is warranted. *See Sofi Classic S.A. de C.V. v. Hurowitz*, 444 F. Supp. 2d 231, 249–50 (S.D.N.Y. 2006) ("Plaintiffs' declaratory judgment claim seeks resolution of legal issues that will, of necessity, be resolved in the course of the litigation of the other causes of action. Therefore, the claim is duplicative in that it seeks no relief that is not implicitly sought in the other causes of action. Accordingly, the declaratory judgment claim is dismissed.").

This District Court has dismissed counts for declaratory relief when such counts are duplicative or redundant of counts for breach of contract on multiple occasions. *See Fleisher v. Phoenix Life Ins. Co.*, 858 F. Supp. 290, 301-02 (S.D.N.Y. 2012) ("Here, the declarations Plaintiffs seek involve conduct so similar to that covered by their express breach of contract claim that entertaining the declaratory judgment claim would not satisfy such criteria, regardless of the inclusion of future conduct."); *Camofi Master LDC v. Coll. P'ship, Inc.*, 452 F. Supp. 2d 462, 480 (S.D.N.Y. 2006) (finding declaratory judgment sought by a party was duplicative of the adjudication of its breach of contract claim because declaratory judgment claim neither of these two objectives "serve[d] a useful purpose in clarifying and settling the legal relations in issue" nor "afford[ed] relief from the uncertainty, insecurity, and controversy giving rise to the proceeding"); *Intellectual Cap. Partner v. Inst. Credit Partners LLC*, No. 08 Civ. 10580(DC), 2009 WL 1974392, at *6 (S.D.N.Y. July 8, 2009) (finding "declaratory relief would serve no useful purpose as the legal issues will be resolved by litigation of the breach of contract claim") (citations

21

omitted); *Dolphin Direct Equity Partners, LP v. Interactive Motorsports & Entm't Corp.*, No. 08 Civ. 1558(RMB), 2009 WL 577916, at *11 (S.D.N.Y. March 2, 2009) ("Because this Court has already analyzed the parties' rights and obligations under the [contracts] in connection with Plaintiffs' breach of contract claims, a declaratory judgment on the same issues would be superfluous.").

Here, Plaintiff's counts for breach of contract and declaratory judgment rely on the same factual and legal allegations:

| Breach of Contract | Declaratory Judgment |
|---|---|
| • "The Policy constitutes a valid and enforceable contract between JGO, as the 'Named Insured,' and Federal, as the 'Company' providing the insurance, under the Policy.";<br><br>• "Under the terms of the Policy, Federal must pay up to the full limits for any loss covered under the Policy, per occurrence, subject only to any applicable sub-limits, time limits, waiting periods, or deductibles for specific coverages"; and<br><br>• "Federal has not paid any amounts to JGO in connection with its claim[.]"<br><br>*See* ECF Doc. 1, at Count I. | • "An actionable and justiciable controversy exists between JGO and Federal concerning the proper construction of the Policy";<br><br>• "Pursuant to the terms of the Policy, Federal is obligated to pay, up to the limit of liability or any applicable sub-limit, per occurrence, business interruption and/or civil authority losses covered under the Policy and not otherwise excluded from coverage"; and<br><br>• Federal disputes its legal obligation to pay JGO's claim."<br><br>*See* ECF Doc. 1, at Count II. |

Based on the allegations of the Complaint, Plaintiff's counts for declaratory judgment and breach of contract rely on identical allegations and seek the exact same relief. Accordingly, Plaintiff's count for declaratory judgment must also be dismissed.

**D. ANY REQUEST BY PLAINTIFF FOR LEAVE TO AMEND ITS COMPLAINT MUST BE DENIED**

"[I]t is well established that leave to amend a complaint need not be granted when amendment would be futile." *Ellis v. Chao*, 336 F.3d 114, 126 (2d Cir.2003). "More specifically, a proposed amendment to a pleading is deemed to be futile if 'it could not withstand a motion to dismiss pursuant to Rule 12(b)(6).'" *E\*Trade Fin. Corp. v. Deutsche Bank AG*, 420 F. Supp. 2d 273, 282 (S.D.N.Y. 2006) (quoting *Oneida Indian Nation of New York v. City of Sherrill*, 337 F.3d 139, 168 (2d Cir.2003)). *See also Health–Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir.1990) ("Although Fed.R.Civ.P. 15(a) provides that leave to amend should be given freely when justice so requires, where, as here, there is no merit in the proposed amendments, leave to amend should be denied."); *Prudential Ins. Co. v. BMC Indus., Inc.*, 655 F. Supp. 710, 711 (S.D.N.Y.1987) (citations and internal quotations omitted) ("Although leave to amend should be freely given, it is inappropriate to grant leave when the amendment would not survive a motion to dismiss.").

Here, any leave for Plaintiff to amend its Complaint would be futile because Plaintiff would be unable to amend its complaint to include allegations that the losses it allegedly suffered as a result of the COVID-19 pandemic were caused by "direct physical loss or damage" to its own properties or any nearby properties. There are no conceivable allegations that Plaintiff can add to its Complaint to sufficiently allege the COVID-19 pandemic has caused any actual or tangible damage to property in order trigger coverage under the Federal Policy. Thus, any request by Plaintiff to amend its complaint should be denied by this Court.

**V.    CONCLUSION**

Federal cannot provide coverage for Plaintiff's losses when the Policy specifically provides that Plaintiff's losses must be caused by "direct physical loss or damage" to property in order to trigger coverage. Thus, for the foregoing reasons, Federal's Motion to Dismiss Plaintiff's

23

Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) should be granted because Plaintiff has failed to state a claim upon which relief can be granted. Furthermore, since it will be impossible for Plaintiff to cure the deficiencies in its Complaint, any leave to further amend should be denied.

Dated:  July 12, 2021

Respectfully submitted,

**CLYDE & CO US LLP**

By:_____s/ Daren S. McNally_____
Daren S. McNally (DM5551)
Barbara M. Almeida (BA7239)
Meghan C. Goodwin (MG3012)
Nicholas S. Pradaxay (5830930)
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
(212) 710-3900 (*phone*)

*Attorneys for Defendant*
*Federal Insurance Company*

24