UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE JOHN GORE ORGANIZATION, INC.,

Plaintiff,

-against-

FEDERAL INSURANCE COMPANY,

Defendant.

**ORDER**

21 Civ. 2200 (PGG) (KHP)

PAUL G. GARDEPHE, U.S.D.J.:

This is a breach of contract and declaratory judgment action in which Plaintiff The John Gore Organization, Inc. ("Gore") contends that it is entitled to insurance coverage pursuant to a policy issued by Defendant Federal Insurance Company ("Federal" or the "Insurer"). (Cmplt. (Dkt. No. 1) ¶¶ 62-76)  Defendant has moved to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 18)  This Court referred Defendant's motion to Magistrate Judge Katharine H. Parker for a Report and Recommendation ("R&R"). (Dkt. No. 22)  Judge Parker has issued an R&R recommending that Defendant's motion to dismiss be granted. (R&R (Dkt. No. 31))  Plaintiff has filed objections to the R&R. (Pltf. Obj. (Dkt. No. 34))

For the reasons stated below, Plaintiff's objections will be overruled, and this Court will adopt the R&R's recommendation that the Complaint be dismissed.

## BACKGROUND

### I.   FACTS

#### A.   The Insurance Policy

Gore is a Delaware corporation with its principal place of business in New York. (Cmplt. (Dkt. No. 1) ¶ 11)  Gore is a "family of companies and brands" that "develop[s],

produce[s], distribut[es] and market[s] . . . Broadway theatre worldwide"; many of its businesses are "centered around New York City and, specifically, Broadway." (Id. ¶ 2)

Federal is an insurance company that is incorporated and headquartered in Indiana. (Id. ¶ 12)  Federal issued a business interruption insurance policy (the "Policy") to Plaintiff for the period between July 1, 2019 and July 1, 2020.  (Id. ¶¶ 5, 40; id., Ex. A (Dkt. No. 1-1) at 2, 22-28)[1]  Plaintiff filed a claim related to the COVID-19 pandemic, which had led to the closure of, inter alia, its Broadway theaters.  Federal denied that claim.  (Cmplt. (Dkt. No. 1) ¶¶ 51-60; id., Ex. B (Dkt. No. 1-2))

The parties' dispute centers on the "Business Income & Extra Expense" and "Civil Authority" provisions of the Policy.

The "Business Income and Extra Expense" provision (the "Business Income" provision) provides that

> [Federal] will pay for the actual: **business income** loss [Gore] incur[s] due to the actual impairment of [Gore's] **operations**; and **extra expense** [Gore] incur[s] due to the actual or potential impairment of [Gore's] **operations**, during the **period of restoration**, not to exceed the applicable Limit Of Insurance for Business Income With Extra Expense shown in the Declarations.

> This actual or potential impairment of **operations** must be caused by or result from direct physical loss or damage by a **covered peril** to **property**, unless otherwise stated.

(Cmplt., Ex. A (Dkt. No. 1-1) at 69 (emphasis in original))[2]  A similar provision applies to business income loss or extra expense sustained at a "**dependent business premises**." (Id. at 72-73)[3]

---

[1]  The page numbers of documents referenced in this Order correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.

[2]  Bolded terms in the Policy are defined terms.  (See, e.g., Cmplt., Ex. A (Dkt. No. 1-1) at 69) All bolded terms in this Order are bolded in the Policy.

[3]  The Policy further provides that "[t]he Limit Of Insurance for Dependent Business Premises applies[] . . . separately to each **occurrence**, regardless of the number of **dependent business**

The Policy's "Civil Authority" provision reads as follows:

> [Federal] will pay for the actual:  **business income** loss[] or **extra expense** . . . incur[red] due to the actual impairment of . . . **operations**, directly caused by the prohibition of access to[] [Gore's] premises[] or a **dependent business premises** by a civil authority.
>
> This prohibition of access by a civil authority must be the direct result of direct physical loss or damage to property away from such premises or such **dependent business premises** by a **covered peril**, provided such property is within[] one mile[] or the applicable miles shown in the Declarations[]. . . .

(Id. at 71-72)

The following definitions apply to terms used in the provisions quoted above:

- "**Business Income** means:  A. net profit or loss, including rental income from tenants and net sales value of production, that would have been earned or incurred . . . ; B. your continuing normal:  1. operating; and payroll, expenses; C. charges you incur which are the legal obligation of your tenant which would otherwise be your obligations; and D. the cost you are required to pay to rent temporary premises when that portion of the premises shown in the Declarations occupied by you is untenable, not to exceed the fair rental value of such untenable portion of the **building** you occupy. . . ." (id. at 137);

- "**Covered peril** means a peril covered by the Form(s) shown in the Property Insurance Schedule Of Forms, except Care, Custody Or Control Legal Liability, applicable to the lost or damaged **property**. . . ." (id. at 138);

- "**Dependent business premises** means premises operated by others on whom you depend to:  deliver materials or services to you or to others for your account (contributing premises); accept your products or services (recipient premises); manufacture products for delivery to your customers under contract of sale (manufacturing premises); or attract customers to your business (leader premises). . . ." (id. at 138);

- "**Extra expense** means necessary expenses you incur:  A. in an attempt to continue **operations**, over and above the expenses you would have normally incurred; and B. to repair or replace any **property**, or to research or restore the lost information on damaged **valuable papers**, records and media, if such action will reduce any loss [Federal] would pay under this insurance. . . ." (id. at 140);

---

**premises** that sustain covered direct physical loss or damage . . . , provided that actual loss for such premises is the direct result of direct physical loss or damage, by a **covered peril**, to the **dependent business premises**." (Id. at 36)  "Occurrence" is defined, inter alia, as "one event[] or a series of causally related events that[] contribute concurrently to[,] or contribute in any sequence to, the loss or damage." (Id. at 145)

- "**Operations** means your business activities occurring at your premises, including your activities as a lessor of premises, prior to the loss or damage" (id. at 146);

- "**Period of restoration** means the period of time that, for **business income**, begins: A. immediately after the time of direct physical loss or damage by a **covered peril** to **property**; or B. on the date **operations** would have begun if the direct physical loss or damage had not occurred, when loss or damage to any of the following delays the start of **operations**: 1. new **buildings** whether complete or under construction; 2. alterations or additions to existing **buildings**; or 3. **personal property** consisting of materials, machinery, equipment, supplies and temporary structures used in the construction of, or for making additions to, alterations or repairs to the structure.

  **Period of restoration** means the period of time that, for **extra expense**, begins immediately after the time of direct physical loss or damage by a **covered peril** to **property.**

  **Period of restoration** will continue until your **operations** are restored, with reasonable speed, to the level which would generate the **business income** amount that would have existed if no direct physical loss or damage occurred, including the time required to: A. repair or replace the **property**. . . ." (id. at 147-48); and

- "**Property** means[] **building**; **personal property**; **personal property of employees**; **electronic data processing property**; **valuable papers**; **fine arts**; or **research and development property**" (id. at 152).

  "[D]irect physical loss or damage" is not defined in the Policy, and the Policy contains no virus exclusion.  (See id., Ex. A (Dkt. No. 1-1); Cmplt. (Dkt. No. 1) ¶¶ 44, 48)

**B.** **Disruption of Plaintiff's Business**

  In March 2020, due to the COVID-19 pandemic, government officials in various "states, counties, and cities where [Gore's] premises and dependent venues are located declared states of emergency to limit the spread of the virus." (Cmplt. (Dkt. No. 1) ¶ 25)  These government officials issued stay-at-home orders that "bann[ed] gatherings of more than 10-50 people." (Id.; see also id. ¶ 27 n.7)  For example, in March 2020, Governor Cuomo "issued a ban on large gatherings . . . and a stay-at-home order that closed non-essential businesses and operations and directed residents to remain at home except for limited, essential purposes." (Id. ¶ 26)  And in mid-March, New York City Mayor Bill de Blasio issued a stay-at-home order.

(<u>Id.</u>) On March 31, 2020, Dallas County Judge Clay Jenkins issued a stay-at-home order, which "shutter[ed] brick-and-mortar venues and requir[ed] the cancellation of all performances in those venues." (<u>Id.</u> ¶ 27)

Plaintiff alleges that "[s]ome of the[se] state, county, and city orders" – including Mayor de Blasio's and Judge Jenkins's orders – "state[] that [the orders are] being issued because the virus had caused, causes, or will cause physical loss or damage to property." (<u>Id.</u> ¶ 28) For example, Mayor de Blasio's order states that "'the virus physically is causing property loss and damage.'" (<u>Id.</u> ¶ 26) And Judge Jenkins's order states that "'the COVID-19 virus causes property loss or damage due to its ability to attach to surfaces for prolonged periods of time." (<u>Id.</u> ¶ 27) According to Plaintiff, "[alt]hough droplets carrying the virus are not visible, they are nonetheless physical objects, carrying a physical substance, that attach to and cause harm to property." (<u>Id.</u> ¶ 22) "[T]he novel coronavirus is resilient and survives on surfaces for days and even weeks." (<u>Id.</u> ¶ 23)

Plaintiff further alleges that in March 2020 there were "multiple confirmed cases of COVID-19 at and near its premises and dependent venues," including a cast member at an Ottawa dependent venue; a guest at a Miami dependent venue; and employees at Times Square theaters located near Plaintiff's corporate offices, and for which Plaintiff sells tickets. (<u>Id.</u> ¶ 31) Plaintiff asserts that its premises were "uniquely vulnerable to the physical damage the virus causes, as large indoor group gatherings are among the highest risk activities for potential COVID-19 exposure." According to Plaintiff, "it is statistically certain that the virus has been present at all of [its] premises and dependent venues for some period of time since the COVID-19 outbreak began." (<u>Id.</u> ¶ 33)

Plaintiff further asserts that the pandemic has had a devastating effect on its business.  "[D]ue to . . . the physical loss and damage to property and the resultant shutdown [o]rders, live theater performances have been prohibited, forcing producers to cancel performances and, in some cases, cancel the entire run of the show."  (Id. ¶ 36)

### C.      The Insurance Claim

In March 2020, after Plaintiff "was notified of the presence of COVID-19-infected individuals at its premises and dependent venues," Plaintiff submitted an insurance claim to Federal for "all coronavirus-related business interruption/disruption losses" at its premises and dependent venues.  (Id. ¶¶ 51-52)  Defendant then requested proof of "'direct physical damage to any of the[se] facilities.'"  (Id. ¶ 54)  Plaintiff responded that "the presence of the virus in and/or around the premises and dependent venues . . . constitutes physical loss or damage."  (Id. ¶ 56; see also ¶ 55)

In a July 31, 2020 letter, Federal notified Plaintiff that its claim was denied.  (Id., Ex. B (Dkt. No. 1-2); see also id. ¶ 57)  Federal discusses the application of the Business Income provisions of the Policy at length, and notes that Gore has

> presented no direct physical loss or damage to property as required by the policy to trigger the policy's Premises Coverage for Business Income And Extra Expense.  Rather, it is [the Insurer's] conclusion that all non-essential businesses were required to cease all activities at facilities except minimum basic operations to slow the spread of COVID-19 to the maximum extent possible.  As the impairment of your operations was not due to direct physical loss or damage to property at or within 1,000 feet of your premises, the terms of the policy's Premises Coverage for Business Income And Extra Expense have not been met and coverage does not apply.

(Id., Ex. B (Dkt. No. 1-2) at 4-5)

After referencing the various executive orders issued by government officials in connection with the COVID-19 pandemic, and summarizing the Policy's Civil Authority provisions, the Insurer states that it

has determined, based upon currently available information, that the foregoing Additional Coverage for Civil Authority does not afford coverage for your claim for business interruption. First, in order for this provision to apply, there must be a prohibition of access to your premises or a **dependent business premises**. Access to your premises was not prohibited. In fact, we understand that your premises were, at all relevant times, accessible for essential administrative duties. Accordingly, because the orders noted above did not prohibit access to your premises, this provision does not apply. No information has been provided establishing that your claim for business interruption was the result of any prohibition of access by a civil authority to your premises or a **dependent business premises**.

Even if access to your premises or a **dependent business premise** was prohibited, which it was not, this policy provision also requires that any prohibition of access must be the direct result of direct physical loss or damage to property away from, but within the greater of one mile or the applicable miles shown in the Declarations, such premises. [The Insurer] has concluded that no civil authority order impacting your operations was actually issued due to the direct result of direct physical loss or damage to property away from, but within the greater of one mile or the applicable miles shown in the Declarations, such premises. As there is no evidence of actual direct physical loss or damage to property away from, but within the greater of one mile or the applicable miles shown in the Declarations, the terms of this Additional Coverage have not been met and coverage therefore does not apply.

(Id. at 1-2, 4-7)

## II.   PROCEDURAL HISTORY

The Complaint was filed on March 12, 2021, and asserts a claim for breach of contract and seeks a declaratory judgment. (Cmplt. (Dkt. No. 1) ¶¶ 62-76) Plaintiff seeks a declaration stating that

- [Gore] has experienced "direct physical loss or damage" to property, as that phrase is used in the Policy, sufficient to trigger coverage;

- Properties within a mile of [Gore]'s premises and dependent venues have experienced "direct physical loss or damage," as that phrase is used in the Policy, sufficient to trigger coverage;

- There was "prohibition of access to [Gore's] [premises and dependent venues]" by the Orders, as that phrase is used in the Policy, sufficient to trigger coverage;

- Federal must pay [Gore] up to its limits of liability for all losses coverage under the Policy; and

7

- The award of such additional relief as the Court deems just and appropriate.

(Id. ¶ 75 (fourth alteration in original))

On August 9, 2021, Defendant moved to dismiss the Complaint, pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Plaintiff's losses are not covered by the Policy. (Notice of Motion (Dkt. No. 18); Def. Br. (Dkt. No. 18-1) at 12-25) Defendant contends that the breach of contract claim must be dismissed, because Plaintiff does not allege (1) a "direct physical loss or damage," as is required under the Business Income and Civil Authority provisions; or (2) that access to its premises was prohibited by a civil authority, as is required under the Civil Authority provision. (Def. Br. (Dkt. No. 18-1) at 12-24) Defendant also argues that Plaintiff's declaratory judgment claim must be dismissed as duplicative of Plaintiff's breach of contract claim. (Id. at 25-27)

On August 10, 2021, this Court referred Defendant's motion to Magistrate Judge Parker for an R&R. (Dkt. No. 22) On December 8, 2021, Judge Parker issued her R&R, recommending that Plaintiff's claims be dismissed without prejudice. (R&R (Dkt. No. 31)) On December 22, 2021, Plaintiff filed objections to the R&R. (Pltf. Obj. (Dkt. No. 34)) On January 5, 2022, Defendant filed a response to Plaintiff's objections. (Def. Obj. Resp. (Dkt. No. 37)) On January 13, 2022, Plaintiff filed a reply. (Pltf. Obj. Reply (Dkt. No. 38))

## III.    THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

In her thorough 23-page R&R, Judge Parker recommends that Defendant's motion to dismiss be granted. (R&R (Dkt. No. 31))

As to the Policy's Business Income provision, Judge Parker notes that it requires "direct physical loss or damage." Judge Parker finds that "[a] plain reading of 'physical loss' connotes a destruction or elimination of property, whereas 'physical damage' connotes tangible

harm to property." (Id. at 12 (citing "physical," Merriam-Webster.com, https://www.merriam-webster.com/dictionary/physical))  Judge Parker also cites decisions in which New York courts have concluded that "direct physical loss or damage" does not encompass mere "loss of use," including, inter alia, Roundabout Theatre Co. v. Continental Casualty Co., 302 A.D.2d 1 (1st Dep't 2002); Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co., 17 F. Supp. 3d 323 (S.D.N.Y. 2014)); and Visconti Bus Serv., LLC v. Utica Nat'l Ins. Grp., 71 Misc.3d 516, 142 N.Y.S.3d 903 (N.Y. Sup. Ct. Feb. 12, 2021).  Judge Parker notes that in Roundabout Theatre – where a theater was forced to close as a result of a nearby construction accident – the First Department considered an insurance policy that premised coverage on a "direct physical loss or damage" to the theater's property.  The court concluded that because the theater had not suffered a "direct physical loss or damage," there was no coverage.  (Id. at 9-12)

In concluding that such a reading is appropriate here, Judge Parker also notes that the Policy provides that there is no coverage for "['']loss or damage that results from loss of market[] [or] loss of use or delay,'" and that the Policy, considered "as a whole, . . . discusses replacement for losses of property and repair of damage to property."  (Id. at 12-13 (citing Cmplt., Ex. A (Dkt. No. 1-1) at 59, 147-48, and quoting id. at 64))

Judge Parker further notes that a "majority of cases in New York have found that [the] presence of the virus and shutdown orders . . . do not trigger coverage under [similar] policies."  (Id. at 14-16 (citing cases))  While acknowledging that "invisible physical damage to a building is possible" – including through radiation, chemical dust, gas, or smoke – Judge Parker concludes that Plaintiff has not adequately alleged that COVID-19 droplets contaminated the structure or function of the relevant properties to the degree that is required.  (See id. (citing Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 236 (3d Cir. 2002) and Kim-

Chee LLC v. Phila. Indem. Ins. Co., No. 20-cv-1136, 2021 WL 1600831, 535 F. Supp. 3d 152

(W.D.N.Y. Apr. 23, 2021)))  And while Judge Parker also acknowledges that Plaintiff has or will

install or implement hand sanitizing stations, plexiglass shields, COVID-related signage,

enhanced HVAC systems, and health screening and contact tracing, she notes that these

measures are intended to safeguard people, not to "replace or repair damage to the property."

(Id. at 16)  Accordingly, Judge Parker finds that "Plaintiff's conclusory allegation[s] of physical

loss or damage [are] insufficient to withstand dismissal."  (Id. at 13, 16)

As to the Civil Authority provision, Judge Parker finds that it does not provide

coverage to Plaintiff, because (1) Plaintiff's alleged loss was not "directly caused by [a]

prohibition of access" to Plaintiff's premises by a civil authority; and (2) the civil authority

orders at issue were not the "direct result of direct physical loss or damage to property."  (See id.

at 16-18)

As to her first point, Judge Parker notes that "'limiting access is distinct from

prohibiting access, such as in a situation where an unsafe condition at an adjoining building

would require a safety evacuation.'"  (Id. at 17 (quoting Sharde Harvey, DDS, PLLC v. Sentinel

Ins. Co., Ltd., No. 20CV3350PGGRWL, 2021 WL 1034259, at *13 (S.D.N.Y. Mar. 18, 2021),

report and recommendation adopted, No. 20CIV3350PGGRWL, 2022 WL 558145 (S.D.N.Y.

Feb. 24, 2022), and citing Food for Thought Caterers Corp. v. Sentinel Ins. Co., Ltd., 2021 WL

860345, at *6, 524 F. Supp. 3d 242, 250 (S.D.N.Y. 2021)))  Here, the government shutdown

orders merely limited the public's access to Plaintiff's properties, but there was no "per se"

prohibition of access, since "individual employee[s] could enter the premises."  (Id.)

As to her second point, Judge Parker finds that – for the same reasons discussed in

connection with the Business Income provision – Plaintiff has not plausibly alleged that the

government shutdown orders were a "direct result of direct physical loss or damage to property." (Id. at 18 (citing Visconti, 142 N.Y.S.3d at 908; Soundview Cinemas Inc. v. Great Am. Ins. Grp., 71 Misc.3d 493, 142 N.Y.S.3d 724, 734-35 (N.Y. Sup. Ct. 2021); and Mangia Rest. Corp. v. Utica First Ins. Co., 72 Misc.3d 408, 148 N.Y.S.3d 606 (N.Y. Sup. Ct. 2021)))

Judge Parker also addresses Plaintiff's argument regarding the absence of a virus exclusion in the Policy. Plaintiff argues that the absence of a virus exclusion (see Cmplt. (Dkt. No. 1) ¶¶ 5, 8, 48, 59) is "significant," because such exclusions are common, and "[w]ere viruses incapable of causing direct physical loss or damage, there would be no need for the widespread virus exclusions in the market." (Pltf. Opp. (Dkt. No. 19) at 30) Judge Parker rejects this argument, because it "attempts to redirect the focus of the Court's analysis from the plain meaning of the coverage provisions to speculation about what parol[] evidence might show about negotiation of the contract." (R&R (Dkt. No. 31) at 18 (citing, inter alia, Com. Union Ins. Co. v. Flagship Marine Servs., Inc., 190 F.3d 26, 33 (2d Cir. 1999) (["T]he absence of an exclusion cannot create coverage.")))

As to Plaintiff's request for a declaratory judgment, Judge Parker notes that "many other courts in cases involving COVID-19 coverage claims like this one have dismissed declaratory judgment causes of action for being redundant of breach of contract claims." Judge Parker recommends that Plaintiff's declaratory judgment claim be dismissed. (Id. at 19-21 (citing cases))

As to leave to amend, Judge Parker notes that – if Plaintiff had been able to – it likely "would have pleaded additional facts establishing physical loss or damage." She nonetheless recommends that Plaintiff be granted leave to amend. (Id. at 21-22)

## IV.   PLAINTIFF'S OBJECTIONS

Plaintiff filed objections to the R&R on December 22, 2021.  (Pltf. Obj. (Dkt. No. 34))

Plaintiff contends that Judge Parker improperly relied on <u>Roundabout Theatre</u> in concluding that the presence of COVID-19 at Plaintiff's premises does not constitute "physical loss or damage."  (<u>Id.</u> at 19-20)  Plaintiff argues that <u>Roundabout Theatre</u> is distinguishable because the policyholder there "<u>did not</u> suffer any physical loss or damage to its property; rather, access to the insured theater was prohibited by a municipal order based on a construction accident nearby."  (<u>Id.</u> at 20)  Moreover, unlike the Civil Authority provision here, the policy in <u>Roundabout Theatre</u> "did not include coverage for losses sustained due to physical damage to nearby properties."  (<u>Id.</u>)  Plaintiff also argues that New York courts have "recogni[zed] that loss of utility due to the presence of dangerous substances constitutes physical loss or damage," and that Judge Parker erred in concluding that contamination from such substances must affect a structure's use or function.  (<u>Id.</u> at 20-23; <u>see also id.</u> at 21-22 (arguing that Judge Parker "wholly failed to address <u>Schlamm Stone & Dolan, LLP v. Seneca Ins. Co.[</u>, 2005 WL 600021, at *4-5 (N.Y. Sup. Ct. Mar. 4, 2005)]"); <u>id.</u> at 24-25 & n.3 (citing out-of-state cases))  Plaintiff maintains that the New York cases addressing COVID-19-related losses are distinguishable because, in those cases – unlike here – "the policyholder did not allege that COVID-19 was present on its property and causing physical loss or damage."  (<u>Id.</u> at 24-25 (emphasis omitted); <u>see also id.</u> at 25 n.4 (citing cases))

Plaintiff also contends that Judge Parker "improperly resolv[ed] disputed factual issues in favor of [Defendant]," and applied her own "subjective views of the facts and science" in concluding that COVID-19 droplets do not cause physical loss or damage."  (<u>See id.</u> at 10; <u>see</u>

also id. at 22-23; id. at 27 ("[Gore's] allegations regarding the nature of COVID-19 and its resilience are robust, plausible, and must be accepted as true at this stage.")) According to Plaintiff, Judge Parker "effectively and improperly issued an expert opinion (or at least took judicial notice) that COVID-19 is more akin to dust (not covered) than a lethal substance like ammonia (covered)." (Id. at 27 (citing, inter alia, Kim-Chee, 535 F. Supp. 3d 152)) Plaintiff also argues that Judge Parker – in interpreting the Policy – should have given weight to Mayor de Blasio's and Judge Jenkins's orders stating that COVID-19 causes damage to property, because these remarks are "'consistent with the reasonable expectations of the average insured.'" (Id. at 27-28 (quoting In re Viking Pump, Inc., 27 N.Y.3d 244, 257 (2016)))

According to Plaintiff, Judge Parker has "rewrit[ten] the [P]olicy under the guise of contract interpretation." (Id. at 23) Her interpretation of "direct physical loss or damage" effectively adds the word "tangible" to the Policy and ignores the distinction between "physical loss" and "damage." (See id.) And her interpretation of the Civil Authority provision effectively requires a "total prohibition of access." Plaintiff argues that a "more reasonable reading" of this provision is that it requires that access be prohibited for the property's "intended use." (Id. at 29-30; see also id. at 30 (distinguishing, inter alia, Food for Thought, 524 F. Supp. 3d 242 and Sharde Harvey, 2021 WL 1034259)) Plaintiff also contends that Judge Parker should have given weight to the absence of a virus exclusion in the Policy. (Id. at 32-33)

As to Plaintiff's request for a declaratory judgment, Plaintiff argues that Judge Parker erred in concluding that this claim is duplicative of Plaintiff's breach of contract claim: "Because "[Gore] has unaccrued losses that have not yet ripened such that a coercive remedy like damages is appropriate, the declaratory judgment claim would afford [Gore] relief independent of the breach of contract claim." (Id. at 31-32 n.7)

Finally, while Plaintiff requests leave to amend, it notes that, "under the reasoning in the R&R, . . . amendment would likely be futile." (Id. at 33)

## V.   THE SECOND CIRCUIT'S DECISION IN *10012 HOLDINGS*

On December 27, 2021 – after the R&R and Plaintiff's objections to the R&R had been filed – the Second Circuit issued its decision in 10012 Holdings, Inc. v. Sentinel Ins. Co., Ltd., 21 F.4th 216 (2d Cir. 2021). In that case, an art gallery brought breach of contract and declaratory judgment claims, seeking to recover under an insurance policy for income lost as a result of the COVID-19 pandemic and Governor Cuomo's emergency orders. Plaintiff sought recovery under the "Business Income," "Extra Expense," and "Civil Authority" provisions of the policy, all of which are materially similar to the provisions at issue here. See id. at 219-20; see also 10012 Holdings, Inc. v. Sentinel Ins. Co., Ltd., 507 F. Supp. 3d 482, 485 (S.D.N.Y. 2020) (describing the "Business Income," "Extra Expense," and "Civil Authority" provisions under the policy at issue). Relying on many of the same New York authorities cited by Judge Parker in the R&R, the Second Circuit affirmed the district court's decision dismissing the art gallery's claims. Id. at 219.

As relevant here, the Second Circuit held that,

> in accord with Roundabout Theatre and every New York state court to have decided the issue, . . . under New York law the terms "direct physical loss" and "physical damage" in the Business Income and Extra Expense provisions do not extend to mere loss of use of a premises, where there has been no physical damage to such premises; those terms instead require actual physical loss of or damage to the insured's property.

Id. at 222.

The Second Circuit also held that the plaintiff art gallery could not recover under the "Civil Authority" provision. The court noted that Governor Cuomo's

> executive orders were the result of the COVID-19 pandemic and the harm it posed to human beings, [and] not, as "risk of direct physical loss" entails, risk of physical damage

to property.  Shuttering a gallery because of possible human infection does not qualify as a "risk of direct physical loss."

Id. at 223.  And "even assuming that COVID-19 itself posed a 'risk of direct physical loss,' coverage under the Civil Authority provision contemplates that the executive orders prohibiting access to the insured's premises were prompted by risk of harm to neighboring premises," and the plaintiff had not alleged such facts.  Id.

Applying 10012 Holdings, the Second Circuit has repeatedly affirmed dismissals of policyholders' claims premised on provisions materially similar to those at issue here.  See Rye Ridge Corp. v. Cincinnati Ins. Co., No. 21-1323-CV, 2022 WL 120782 (2d Cir. Jan. 13, 2022); Kim-Chee LLC v. Phila. Indem. Ins. Co., No. 21-1082-CV, 2022 WL 258569 (2d Cir. Jan. 28, 2022); Deer Mountain Inn LLC v. Union Ins. Co., No. 21-1513, 2022 WL 598976 (2d Cir. Mar. 1, 2022).

In Kim-Chee, the Second Circuit held that a policyholder's allegations regarding the presence of the COVID-19 virus on or near its property were insufficient to state a claim, because "the complaint does not allege that any part of its building or anything within it was damaged – let alone to the point of repair, replacement, or total loss."  Kim-Chee, 2022 WL 258569, at *2; see also id. ("[Plaintiff does not] explain how, other than by the denial of access, any of its property could no longer serve its insured function.").  In concluding that the policyholder's claims were properly dismissed, the court ruled that "the virus's inability to physically alter or persistently contaminate property differentiates it from radiation, chemical dust, gas, asbestos, and other contaminants whose presence could trigger coverage under [the] policy."  Id. (citing Kim-Chee, 535 F. Supp. 3d at 159).

**DISCUSSION**

I.   **LEGAL STANDARDS**

    A.   **Review of a Report and Recommendation**

        A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a timely objection has been made to a magistrate judge's recommendation, the district court judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. However, "[o]bjections that are 'merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original [papers] will not suffice to invoke de novo review.'" Phillips v. Reed Grp., Ltd., 955 F. Supp. 2d 201, 211 (S.D.N.Y. 2013) (alteration in Phillips) (quoting Vega v. Artuz, No. 97 Civ. 3775 (LTS) (JCF), 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002)). "To the extent . . . that the party . . . simply reiterates the original arguments, [courts] will review the Report strictly for clear error." IndyMac Bank, F.S.B. v. Nat'l Settlement Agency, Inc., 07 Civ. 6865 (LTS) (GWG), 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008) (citing Pearson-Fraser v. Bell Atl., No. 01 Civ. 2343 (WK), 2003 WL 43367, at *1 (S.D.N.Y. Jan. 6, 2003) and Camardo v. Gen. Motors Hourly-Rate Employees Pension Plan, 806 F. Supp. 380, 382 (W.D.N.Y.1992)); see also Ortiz v. Barkley, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) ("Reviewing courts should review a report and recommendation for clear error where objections are merely perfunctory responses, . . . rehashing . . . the same arguments set forth in the original petition." (quotation marks and citation omitted)). A decision is "clearly erroneous" when, "upon review of the entire record,

[the court is] left with the definite and firm conviction that a mistake has been committed."
United States v. Snow, 462 F.3d 55, 72 (2d Cir. 2006) (quotation marks and citation omitted).

### B. Rule 12(b)(6) Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss[,] . . . the court is to accept as true all facts alleged in the complaint," and must "draw all reasonable inferences in favor of the plaintiff." Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007). A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 556 U.S. at 678 (alteration in Iqbal) (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Northeast Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to establish entitlement to relief]." Iqbal, 556 U.S. at 678.

### C. New York Insurance and Contract Law

"Under New York law, 'an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract.'" Morgan Stanley Grp. Inc. v. New Eng. Ins. Co., 225 F.3d 270, 275 (2d Cir. 2000) (quoting Vill. of Sylvan Beach v. Travelers Indem. Co., 55 F.3d 114, 115 (2d Cir. 1995)).[4] "The initial interpretation of a contract

---

[4] Judge Parker properly applies New York law. (See R&R (Dkt. No. 31) at 6) "A federal court sitting in diversity applies the choice-of-law rules of the forum state." Maryland Cas. Co. v. Continental Cas. Co., 332 F.3d 145, 151 (2d Cir. 2003). New York applies the "center of

is a matter of law for the court to decide." Id. (quotation marks, citation, and alteration omitted).

"If the language of [an insurance] policy is doubtful or uncertain in its meaning, any ambiguity

must be resolved in favor of the insured and against the insurer." Westview Assocs. v. Guar.

Nat'l Ins. Co., 95 N.Y.2d 334, 340 (2000).  But "[w]here the provisions of [a] policy are clear

and unambiguous, they must be given their plain and ordinary meaning, and courts should refrain

from rewriting the agreement." U.S. Fid. & Guar. Co. v. Annunziata, 67 N.Y.2d 229, 232 (1986)

(quotation marks and citations omitted).

Where the New York Court of Appeals has not addressed a particular legal issue,

this Court is "bound . . . to apply the law as interpreted by New York's intermediate appellate

courts . . . unless [it] find[s] persuasive that the New York Court of Appeals . . . would reach a

different conclusion." Pahuta v. Massey-Ferguson, Inc., 170 F.3d 125, 134 (2d Cir. 1999)

(citations omitted).  Where the Second Circuit has interpreted New York law as pronounced by

New York's intermediate appellate courts, however, this Court is bound by Second Circuit

---

gravity" approach to contract disputes, requiring courts to "apply the law of the place which has
the most significant contacts with the matter in dispute." Id. (quotation marks omitted).  Given
that Plaintiff's principal place of business is in New York, that the insurance broker is located in
New York, and that the insurer's servicing office is located in New York (see Cmplt. (Dkt. No.
1) ¶ 11; Cmplt., Ex. A (Dkt. No. 1-1) at 12, 15-16, 22), New York has the most significant
contacts with the matter in dispute. See Feldman Law Grp. P.C. v. Liberty Mut. Ins. Co., 819 F.
Supp. 2d 247, 255-56 (S.D.N.Y. 2011) (under New York law, "[i]n the insurance context, courts
typically apply the law of the state which the parties understood was to be the principal location
of the insured risk" (quotation marks and citation omitted)).  The parties have also relied on New
York law in their briefs, and Defendant states that New York law governs this dispute. (See Def.
Br. (Dkt. No. 18-1) at 11-12; Pltf. Opp. (Dkt. No. 19) at 14-15; Pltf. Obj. (Dkt. No. 34) at 17-18;
see also Fleisher v. Phoenix Life Ins. Co., 858 F. Supp. 2d 290, 297-98 (S.D.N.Y. 2012) (where
parties "implicitly agree[]" that New York law governs – including by citing primarily to New
York law in their briefs – "this is sufficient to establish choice of law" (quotation marks and
citations omitted)); Smith v. Mikki More, LLC, 21 F. Supp. 3d 276, 282 n.2 (S.D.N.Y. 2014)
("Both parties cite New York law in their arguments concerning plaintiffs' quasi-contract claim.
'[W]here the parties agree that New York law controls, this is sufficient to establish choice of
law.' Fed. Ins. Co. v. Am. Home Assurance Co., 639 F.3d 557, 566 (2d Cir. 2011).")))

precedent unless and until the New York Court of Appeals reaches a contrary conclusion.  See

Adebiyi v. Yankee Fiber Control, Inc., 705 F. Supp. 2d 287, 291 n.4 (S.D.N.Y. 2010) (collecting

cases).

## II.    ANALYSIS

### A.    Standard of Review

Plaintiff's objections largely parrot arguments it made before Judge Parker,

including that (1) Roundabout Theatre and other New York cases denying coverage are

distinguishable because the plaintiffs in those cases did not allege physical loss or damage; (2)

this Court should rely on out-of-state courts' reading of the Business Income provision; and (3)

adopting Defendant's reading of the Business Income and Civil Authority provisions would

"rewrite the Policy under the guise of contract interpretation." (Compare Pltf. Obj. (Dkt. No. 34)

at 19-33 with Pltf. Opp. (Dkt. No. 19) at 16-31)

Plaintiff also contends that Judge Parker overlooked Schlamm Stone & Dolan,

LLP v. Seneca Insurance Company, 2005 WL 600021 (N.Y. Sup. Ct. Mar. 4, 2005), and

improperly resolved fact issues as to whether COVID-19 droplets cause physical loss or damage

to property.  (See Pltf. Obj. (Dkt. No. 34) at 10, 12-13, 18-19, 21-23, 27)  To the extent that these

latter arguments do not "reiterate[] the original arguments" set forth in Plaintiff's opposition

brief, this Court considers these arguments de novo.  See IndyMac Bank, 2008 WL 4810043, at

*1.

### B.    Breach of Contract Claim

The parties agree that the Policy provisions relevant to this dispute are the

"Business Income" and "Civil Authority" provisions.  (See Def. Br. (Dkt. No. 18-1) at 6-8; Pltf.

Opp. (Dkt. No. 19) at 11)  The Court considers below Plaintiff's objections as they relate to Judge Parker's interpretation of these provisions.

### 1.    The Business Income Provision

In connection with the Policy's Business Income provision, Plaintiff complains that Judge Parker (1) misapplies Roundabout Theatre and its progeny, while ignoring a line of contrary authority (Pltf. Obj. (Dkt. No. 34) at 19-27); (2) effectively reads-in the word "tangible" when interpreting "direct physical loss or damage" (id. at 23); (3) conflates "physical loss" and "physical damage" in interpreting the Policy (id. at 23-24); (4) does not consider the absence of a virus exclusion in interpreting the Policy (id. at 32-33); (5) should have given weight to Mayor de Blasio's and Judge Jenkins's statements that the virus had caused physical loss or damage to property (id. at 27-28); and (5) improperly resolves factual disputes in Defendant's favor (id. at 10, 12-13, 18-19, 26-27).

Judge Parker did not err in relying on Roundabout Theatre and its progeny. 10012 Holdings adopts the reasoning of Roundabout Theatre in interpreting the phrase "direct physical loss" in policy provisions materially similar to those at issue here. See 10012 Holdings, 21 F.4th at 220-21.  And 10012 Holdings holds that "direct physical loss or damage" "do[es] not extend to mere loss of use of a premises" and that this term "require[s] actual physical loss of or damage to the insured's property." Id. at 222.

While Plaintiff cites out-of-Circuit case law it argues is inconsistent with Roundabout Theatre (Pltf. Obj. (Dkt. No. 34) at 21-27), this Court must follow the Second Circuit's interpretation of New York law. See Adebiyi, 705 F. Supp. 2d at 291 n.4; see also 10012 Holdings, 21 F.4th at 221 ("[C]ourts in jurisdictions outside New York may have reached a different conclusion, but all New York courts applying New York law have soundly rejected

the argument that business closures due to New York Executive Orders constitute physical loss or damage to property." (quotation marks, citation, and alterations omitted)).

Plaintiff's reliance on Schlamm Stone & Dolan, LLP v. Seneca Insurance Company, 2005 WL 600021 (N.Y. Sup. Ct. Mar. 4, 2005) (see Pltf. Obj. (Dkt. No. 34) at 21-22) is misplaced, because that case addresses noxious dust resulting from the September 11, 2001 terrorist attacks. See Schlamm Stone, 2005 WL 600021, at *4-5. The Second Circuit has held that COVID-19's "inability to physically alter or persistently contaminate property differentiates it" from "other contaminants whose presence could trigger coverage." Kim-Chee, 2022 WL 258569, at *2.

Plaintiff seeks to distinguish 10012 Holdings on the grounds that the policyholder "did not allege the physical presence of COVID-19 at or on its property" (Pltf. Obj. Reply (Dkt. No. 38) at 3), as Plaintiff does here. (See Cmplt. (Dkt. No. 1) ¶¶ 22-23, 31-33, 39, 47, 55-56) But this argument has also been rejected by the Second Circuit. See Kim-Chee, 2022 WL 258569, at *2 (presence of COVID-19 virus on surface insufficient to state a claim because "complaint does not allege that any part of its building or anything within it was damaged").

Plaintiff also argues that Judge Parker improperly resolved factual disputes about whether the COVID-19 virus caused physical damage to Plaintiff's property, but this argument likewise fails under 10012 Holdings and Kim-Chee. Plaintiff argues that its "extensive remediation efforts" – including installing hand sanitizing stations, plexiglass shields, COVID-related signage, and enhanced HVAC systems (Cmplt. (Dkt. No. 1) ¶ 4) – demonstrate that COVID-19 caused a physical loss or damage to its property (Pltf. Obj. (Dkt. No. 34) at 12), but Judge Parker correctly found that these remediation efforts "are not there to replace or repair damage to the property[;] they are there to protect humans." (R&R (Dkt. No. 31) at 16) And in

10012 Holdings, the Second Circuit "rejected the notion that the COVID-19 virus – standing alone – could cause 'physical damage' to property." Judge Parker's findings are thus fully consistent with the case law in this Circuit. See Sharde Harvey, 2022 WL 558145, at *10.

Mayor de Blasio's and Judge Jenkins's statements that the COVID-19 virus has caused physical loss or damage to property are of no force here, given the Second Circuit law to the contrary. See Chefs' Warehouse, Inc. v. Emps. Ins. Co. of Wausau, No. 20 CIV. 4825 (KPF), 2021 WL 4198147, at *11 (S.D.N.Y. Sept. 15, 2021) ("[T]here is no support for the proposition that generalized and speculative statements in a municipal order can alter the meaning of preexisting contract terms." (quotation marks and citation omitted)). And given that Plaintiff "has not shown it suffered a covered loss under its insurance policy, . . . the absence of [a] virus exclusion does not alter this conclusion." Kim-Chee, 2022 WL 258569, at *2.

In sum, Judge Parker correctly concludes that Plaintiff's claims under the Business Income provision are foreclosed by the language of the Policy.

### 2.   **The Civil Authority Provision**

As to the Civil Authority provision, Plaintiff complains that Judge Parker (1) improperly read in a "total prohibition of access" requirement; and (2) mistakenly concluded that the shutdown orders were not a direct result of physical loss or damage. (Pltf. Obj. (Dkt. No. 34) at 29-31) Because Plaintiff's objections repeat nearly verbatim arguments made in its opposition brief, this portion of the R&R is reviewed for clear error. See Phillips, 955 F. Supp. 2d at 211.

With respect to the "prohibition of access" language in the Civil Authority provision, Plaintiff contends that Judge Parker mistakenly relied on Food For Thought and Sharde Harvey in imposing a "total prohibition of access" requirement. (Pltf. Obj. (Dkt. No. 34) at 30) In both cases, the relevant policy provisions required that access to the insured's premises

be "specifically prohibited by order of a civil authority." <u>See</u> <u>Food for Thought</u>, 524 F. Supp. 3d at 244, 249-50; <u>Sharde Harvey</u>, 2021 WL 1034259, at *2. Plaintiff notes that the word "specifically" does not appear in the Civil Authority provision at issue here, and that, accordingly, executive orders that limit access to Plaintiff's premises for their intended purpose – "the selling of tickets and advertising, the performing of shows, and the attending of performances by audience members" – are sufficient to trigger coverage under the Civil Authority provision. (Pltf. Obj. (Dkt. No. 34) at 29-30)

This Court finds no error in Judge Parker's conclusion. Many other courts in this District have found that Civil Authority provisions similar to that at issue here – provisions that do not contain the word "specifically" – were not triggered by COVID-related shutdown orders. <u>See</u>, <u>e.g.</u>, <u>Hudson Valley Bone and Joint Surgeons, LLP v. CNA Fin. Corp. & Nat'l Fire Ins. Co. of Hartford</u>, No. 20 CV 6073 (VB), 2021 WL 4340987, at *6 (S.D.N.Y. Sept. 23, 2021); <u>Chefs' Warehouse</u>, 2021 WL 4198147, at *11; <u>Kim-Chee</u>, 535 F. Supp. 3d at 162. Given that Plaintiff does not contest that individual employees were permitted to access Plaintiff's premises and the dependent venue premises during the relevant time period, Judge Parker did not err in finding that access was not prohibited for purposes of the Civil Authority provision.

As to whether the shutdown orders were a "direct result of direct physical loss or damage to property," Judge Parker correctly concludes that this condition is not met. (R&R (Dkt. No. 31) at 18) As with the Business Income provision, Plaintiff's allegations regarding the presence of COVID-19 in or near its premises are not adequate to state a claim. <u>See</u> <u>10012 Holdings</u>, 21 F.4th at 223 (finding that New York's shutdown orders "were the result of the COVID-19 pandemic and the harm it posed to human beings, not, . . . as [a result of the] risk of physical damage to property" (quotation marks omitted)).

In sum, Judge Parker correctly concludes that Plaintiff is not entitled to coverage under the Civil Authority provision.

*     *     *     *

Judge Parker's recommendation that Plaintiff's breach of contract claim be dismissed will be adopted by this Court.

## C.     <u>Declaratory Judgment Claim</u>

Judge Parker recommends that Plaintiff's declaratory judgment claim be dismissed.  (R&R (Dkt. No. 31) at 19-21)  Having ruled that Plaintiff's breach of contract claim fails, Plaintiff's declaratory judgment claim will be dismissed for the same reasons.  <u>See Red Apple Dental, P.C. v. Sentinel Ins. Co. Ltd.</u>, No. 20CV3549, 2021 WL 4455056, at *5 (S.D.N.Y. June 11, 2021) ("[A] [c]ourt can only enter declaratory judgment in favor of someone who has a substantive claim.").

## III.     <u>LEAVE TO AMEND</u>

Plaintiff requests that it be granted leave to amend "to address the most up-to-date scientific understanding of COVID-19 and [Gore's] updated losses, which have evolved since it initially filed its complaint." (Pltf. Obj. (Dkt. No. 34) at 33)

Under the Federal Rules of Civil Procedure, leave to amend should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2).  District courts "ha[ve] broad discretion in determining whether to grant leave to amend." <u>Gurary v. Winehouse</u>, 235 F.3d 792, 801 (2d Cir. 2000).  Leave to amend may properly be denied in cases of "'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the

amendment, futility of amendment, etc.'" Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).

"Where the possibility exists that [a] defect can be cured," leave to amend "should normally be granted" at least once. Wright v. Ernst & Young LLP, No. 97 CIV. 2189 (SAS), 1997 WL 563782, at *3 (S.D.N.Y. Sept. 10, 1997), aff'd, 152 F.3d 169 (2d Cir. 1998) (citing Oliver Schs., Inc. v. Foley, 930 F.2d 248, 253 (2d Cir. 1991)). Moreover, where a claim is dismissed on the grounds that it is "inadequate[ly] [pled]," there is "a strong preference for allowing plaintiffs to amend." In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig., No. 08 MDL 1963, 2011 WL 4072027, at *2 (S.D.N.Y. Sept. 13, 2011) (citing Ronzani v. Sanofi S.A., 899 F.2d 195, 198 (2d Cir. 1990)).

Here, it appears doubtful that any amendment will be successful, given Plaintiff's likely inability to demonstrate, inter alia, a "direct physical loss or damage." Nonetheless, given the lenient standard that applies here, leave to amend is granted as set forth below.

## CONCLUSION

For the reasons stated above, the R&R's recommendation is adopted, and the Complaint is dismissed. Any motion for leave to file an amended complaint will be submitted by **April 11, 2022**. The proposed amended complaint is to be attached as an exhibit to the motion, and must be consistent with the reasoning of this Order. The Clerk of Court is directed to terminate the motion (Dkt. No. 27).

Dated: New York, New York
      March 23, 2022

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge

25